[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO MODIFY
CT Page 10130
By motion dated December 16, 1999, the defendant father, Michael Strathearn, commenced this post judgment action seeking to modify an original custody order that had granted joint custody to the parents and primary residence to the mother.
The plaintiff mother filed for divorce on November 22, 1996. On May 23, 1997, by agreement, judgement entered granting the parties divorce with the following pertinent provision:
 Maureen and Michael agree that they shall have joint legal custody of their minor children with Maureen having physical custody. Michael shall have liberal and flexible access and rights of visitation with the children, to include, but not be limited to, alternating weekends from Friday to Sunday and two afternoons/evenings per week to share activities with the children. Specific weekdays and times will be arranged by mutual agreement of the parties after considering the schedules of the parents and the children. Michael shall also have, at his option, an hour telephone conversation each day with the children at a mutually acceptable time.
On September 23, 1998, the father filed a Motion for Immediate Hearing on a Motion to Restrain Plaintiff from Interfering with Court-Ordered Visitation Post-Judgment, alleging that the father had been refused his right to visit with and have telephone contact with the children as ordered by the court. The Motion for Hearing was granted by the court but it is unclear from the record what the outcome or resolution of the Motion to Restrain was. On December 7, 1999, the father filed a Motion to Compel, again alleging interference on the part of the mother and stepfather with respect to the father's visitation with his children. This Motion was granted by stipulation on December 15, 1999. In a motion dated December 16, 1999, the father requested a Temporary and Permanent Injunction, seeking to enjoin the mother from removing the children from the State of Connecticut. In a separate motion on that date, he also requested a modification of the children's primary residence, post-judgment, alleging an attempted drug purchase and drug use by the stepfather. On December 16, 1999, the court granted an ex parte Motion to Enjoin filed by the father.
On January 7, 2000, the mother filed a Motion to Relocate Out-Of-State With Minor Children, a Motion for Supervised Visitation, and a Motion for Modification of Visitation. On January 20, 2000, the father filed a CT Page 10131 Motion for Contempt alleging interference by the mother in his visitation with his children and alleging that she had removed the children to Florida over the Christmas holiday in violation of the court's order.
On February 2, 2000, Attorney Emily Moskowitz was appointed as GAL for Christina and as attorney for Megan and Katherine. Dr. James Black was requested to perform a full custody evaluation of the parties, their children and the step-parent. On February 25, 2000, the father filed a Motion for Contempt again alleging interference by the mother with respect to his visitation with his children. These issues were resolved by stipulation on March 1, 2000. On that date, Attorney Moskowitz became the guardian ad litem for both Megan and Christina but continued in her representation as attorney for Katherine. On June 7, 2000, the mother filed a Motion for Order Regarding Visitation.
Over a four day period, testimony was presented by Maureen Consiglio, the mother; Michael Strathearn, the father; Richard Consiglio, the stepfather; and Dr. James Black, court appointed psychiatric evaluator. The following exhibits were also entered at trial:
 Dr. Black's evaluation report (Atty. for Minor Child "MC" Ex. 1)
 Letter from Katherine Strathearn to her father dated 1-26-00 (Atty. for MC Ex. 2)
 Birthday Card from Katherine to her father dated 7-11-99 (Atty. for MC Ex. 3)
 6 documents re stepfather's drug treatment dated 1995 (Pl's Ex. 1)
 Father's letter from IRS re: dependency exemption; 1-20-2000 (Def. Ex. A)
 Father's tax return for tax year 1998 (Def's Ex. B)
 Father's notes of alleged drug-buying by Mr. Consiglio, 12-12-99 (Def. Ex. C)
 Father's notes of conversation with mother dated 12-11-99 (Def. Ex. D)
 Letter from mother to father re: excellent father and husband (Def. Ex. E) CT Page 10132
The majority of these exhibits were also shared with Dr. Black in the course of his evaluation.
The court has considered all of the testimony and exhibits entered at trial and has evaluated the credibility of the witnesses. The court, therefore, finds the following:
The mother and Mr. Consiglio grew up together and agreed, as young children, to marry when they were nineteen. At the age of nineteen, Mr. Consiglio indicated that he was not ready for marriage. This angered the mother and she did not speak with him for the next twenty years. Between 1991 and 1994, Mr. Consiglio "binged" on cocaine. In 1993, Mr. Consiglio and his then wife lost custody of their two young children for neglect because he was using illegal drugs; neither he nor his wife ever regained custody of his children. In 1994, Mr. Consiglio was arrested after he threatened his wife and held the police at bay with a shotgun for several days; he also shot off his own finger. By his own admission, he was "high" on cocaine during this period. He was incarcerated for a period of time and received a suspended sentence with three years of probation for this incident.
The mother married Mr. Strathearn on June 8, 1975. Throughout the course of their marriage, the mother stayed at home with the six children and the father provided financially for the family. Mr. Strathearn was a dependable wage earner and dedicated to his family. He was not as involved with the hands-on raising of the children as the mother was and there was a clear division of roles in the family with Mrs. Strathearn content to stay at home with the children and provide the primary parenting. There was affection between Mr. Strathearn and his children and wife as evidenced through cards and letters entered as exhibits and through testimony.
During the marriage, Mrs. Strathearn and other family members had portrayed to Mr. Strathearn that Mr. Consiglio was a violent person, involved in sexual escapades and was a drug dealer and drug user. After Mr. Consiglio's incarceration in 1994, Mrs. Strathearn learned of Mr. Consiglio's troubles with drugs and the law and asked her husband to drive her to New Jersey where Mr. Consiglio was incarcerated so that she could "save him." This occurred on several occasions and Mr. Strathearn willingly transported his wife, with her rosary beads and bible, because she was afraid to drive. Upon his release from jail, Mr. Consiglio was placed on probation for three years and during this period, he and his wife would visit the Strathearn's, whose six children called him "Uncle Richard." Mr. Consiglio also attended drug treatment mandated as a condition of his probation and during 1995, he did not appear to be using CT Page 10133 illegal drugs.
Unbeknownst to Mr. Strathearn, at some point, Mr. Consiglio separated from his then wife and moved to Lake Hayward, in closer proximity to the Strathearn's home. There, Mr. Consiglio and Mrs. Strathearn began to see one another and it is the court's conclusion that they engaged in an affair. Mrs. Strathearn would tell Mr. Strathearn that she was attending church, sometimes until 2:00 a.m., and her husband believed her. At some point in 1995, Mrs. Strathearn revealed her continuing relationship with Mr. Consiglio to her husband, told her husband that she wanted to be with Mr. Consiglio, left the family for a weekend, then returned, and the Strathearn remained together during the summer. In August 1995, Mrs. Strathearn informed her husband that she had tried to end the relationship with Mr. Consiglio but that he wasn't dealing very well with the news. This led to a confrontation in the Strathearn home where Mr. Consiglio, who appeared "high" on drugs, threw a box of "sex toys", contraceptive devices and other paraphernalia on the Strathearn driveway and yelled obscenities at the mother. During this incident, many of the Strathearn children were present in the home. Mr. Consiglio also demanded that Mr. Strathearn pay for the rent on the Lake Hayward house where he had been seeing Mr. Strathearn's wife. At a later time on that same day, Mr. Consiglio returned to the Strathearn home when the parents were not present, and frightened the children who called the police. He then left and made harassing telephone calls to the family. Mr. Consiglio was subsequently arrested for these events and faced a violation of his probation but Mrs. Strathearn urged Mr. Strathearn to drop the charges against Mr. Consiglio and he did. She also asked her husband to pay for Mr. Consiglio's lawyer. In retrospect, Mr. Strathearn realized that dropping the charges was a mistake because, had Mr. Consiglio been violated on his probation, he could have gone to jail for a significant period of time.
At some point in 1996, Mr. Strathearn moved out of the family home and in 1997, the Strathearn's divorced and Mrs. Strathearn and Mr. Consiglio continued to see each other. Pursuant to the parties agreement, Mrs. Strathearn had primary residence of the minor children. By July of 1998, Mrs. Strathearn and Mr. Consiglio were officially engaged and they married soon thereafter. The children were then instructed by the now Mrs. Consiglio to call their new stepfather "dad." At some point, they were also instructed to call their father "bio dad." At some point, the children were removed from Catholic schools where they had always attended. The Consiglio's sought little to no input from Mr. Strathearn on any decisions affecting the children. Mr. Consiglio did not want his new wife communicating with her former husband and so any issues regarding the children had to go through Mr. Consiglio per his instructions. Mr. Consiglio has a need to be with Mrs. Consiglio CT Page 10134 constantly when he is not at work and he spends significant periods, which the court finds to be concerning, working closely with his young and teenage stepdaughters on their homework and other activities. He is also in regular communication with the children's school teachers.
Over Thanksgiving 1999, Mr. Consiglio attempted to buy $500.00 worth of cocaine through the oldest daughter's (Jennifer Strathearn) husband. The court finds this allegation quite credible in light of the evidence, particularly with respect to Mr. Consiglio's past history of drug use, Mrs. Consiglio's initial reaction upon learning of the allegation from her daughter, and the implausible explanation provided by Mr. Consiglio at the time of the incident and in his testimony. It is clear to the court that Mr. Strathearn had every reason to be concerned for his daughters in the primary care of Mrs. Consiglio and her husband, and he appropriately filed motions in court to address those concerns.
Since the time of the attempted drug purchase, the family has become very divided with the three adult Strathearn children gravitating toward their father, the 17 year old daughter Katherine recently gravitating toward her mother and the two youngest children somewhat neutral. It is clear to the court that Mrs. Consiglio and her husband have acted to undermine Mr. Strathearn in his relationship with the children. The evidence was overwhelming from testimony and from Dr. Black's evaluation report that Mr. Consiglio has essentially taken control over Mrs. Consigllo and the 3 younger children, with Mr. Strathearn being portrayed in a profoundly negative light. Mrs. Consiglio and her husband have minimized Mr. Stratheam's contributions to his family and his role as a father. During Dr. Black's assessment, the Consighos made it clear that they saw nothing positive in Mr. Strathearn and they both took credit for how well the children were doing, giving Mr. Strathearn no credit whatsoever. All indications at trial were that Mr. Strathearn, while having made some errors in judgment in the past, is a decent, hardworking, and honorable man who has been and continues to be an excellent father to all of his children.
The court is troubled by Mr. Consiglio's attempt, during his testimony, to equate his having lost his children to the state because of his malfeasance, with Mr. Strathearn's increasing estrangement from his children which was brought on by the specific actions and attitudes of Mrs. Consiglio and her husband. They evidenced little if any recognition of the detriment to these children in having Mr. Strathearn less involved in their lives or in having him replaced, for all intents and purposes, by Mr. Consiglio. Several examples of this undermining, which the court finds credible, were cited in testimony at trial: Mr. Strathearn not being invited to Katherine's Honor Society induction and only when pressed by the GAL, was he permitted to attend under parameters set by the CT Page 10135 Consiglio's; Mr. Strathearn wrongly portrayed by the Consiglio's as the person preventing the children from seeing their dying grandfather; Mr. Strathearn portrayed as the villain with respect to his not paying Katherine's college expenses despite a tacit agreement between the parents for Mrs. Consiglio to assume those expenses for the three youngest children; and Mr. Strathearn's input ignored and undermined with respect to Katherine's attending Catholic high school and her choice of colleges.
This court found Mrs. Consiglio and her husband somewhat lacking in credibility in both their testimony and in her financial affidavit.
The parties agreed that it would not be in any of the children's best interests to testify at trial although the Guardian ad litem provided information to the court regarding the children's wishes.[1] The Guardian Ad Litem recommended that awarding sole custody of Megan and Christina to Mr. Strathearn was in the children's best interests.
Before this court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child. Brubeckv. Burns-Brubeck, 42 Conn. App. 583, 585, 680 A.2d 327 (1996); Lane v.Lane, A.C. 19592. The court first finds in the instant case that there has been a material change in circumstances. What was contemplated by the original custody and visitation order, to allow Mr. Strathearn to continue to parent his children and to be a positive influence in their lives, has not been permitted to happen. With respect to the best interests of the children, the evidence has overwhelmingly established that the direct and subtle interference by Mrs. Consiglio and her husband in the relationship between Mr. Strathearn and his daughters has been insidious, destructive and is likely to continue.
Furthermore, the court finds that Mrs. Consiglio's denial of her husband's attempted drug purchase, given his violent history, indicates that she is likely to put her relationship with Mr. Consiglio before the safety of her children. The children would certainly be at risk should Mr. Consiglio experience a substance abuse relapse.
The court is cognizant of the fact that while Dr. Black recommended that the children's current residence not be changed unless there was a substantial reason for doing so, he also noted that if there was little effort by Mrs. Consiglio and her husband to reduce their contribution to the alienation between the father and his daughters, serious consideration should be given to shifting the children's residence to the father. CT Page 10136
The court finds that Dr. Black's report, coupled with the testimony at trial as well as the exhibits introduced, all establish that an immediate change in the children's residence would be in their best interest. At this juncture, the father is the more stable, caring parent and the parent most likely to protect his children and to willingly facilitate a healthy relationship with the other parent.
Therefore, after considering the evidence presented at trial as well as the factors set forth in Connecticut General Statutes § 46b-56 and other pertinent statutes and case law, the court finds that it is in the children's best interests to order the following:
1. Custody
The court makes no order with respect to Katherine Strathearn. Katherine will attain majority on October 13, 2001 and any order of this court with respect to her would be largely moot.
The court orders sole custody and primary residence of the minor children, Megan and Christina, with the father. Physical transfer of the two children is to take place immediately. The mother will be entitled to visitation as follows:
For the month of August to September 14, 2001, visitation with the mother is suspended during which time the father will move to larger accommodations, register the children in school, sign the children up for any other appropriate activities, hire a babysitter/nanny for after school and/or weekends when he is unavailable to care for them, and engage the children in therapy to address any issues that may arise out of this change in custody. This order in no way precludes the father from utilizing willing, appropriate family members to supervise the children when he is unavailable.
During this period, the children shall have telephone access to Mrs. Consiglio and this access is contingent upon her and her husband's ability to appropriately facilitate the children's positive transition to their father's home.
After September 14, 2001, Mrs. Consiglio shall have visitation with the children every other weekend, from Friday after school to Sunday at 6:00 p.m. In addition the mother shall be entitled to a dinner visit with the children every other Wednesday from 6:00 p.m. to 8:00 p.m. Again, this visitation is contingent upon Mrs. Consiglio and her husband's ability to facilitate a smooth transition and to refrain from doing or saying anything that will undermine the children's reestablishment of a relationship with their father or this court's order. Transportation for CT Page 10137 weekend and holiday/vacation visitation shall be evenly divided between the parents. Any communications regarding changes in the children's visitation schedule or their welfare shall occur between Mrs. Consiglio and Mr. Strathearn.
With respect to holidays, the following schedule shall be in place for 2001-2002:
 A. The mother shall have the children for Thanksgiving Day; Christmas Day, 12:00 p.m. until December 29, 2001, 8:00 p.m.
 B. The father shall have the children for Christmas eve until Christmas day at 12:00 p.m.; December 29 at 8 p.m. and for the duration of the holiday week through New Year's
 C. The parents shall alternate school vacation weeks and holiday weekends including Easter, Memorial Day, and the 4th of July.
 D. Thereafter, the parents shall alternate the above schedule annually.
 E. In the summertime, the mother shall have visitation with the children for 4 one week periods; she is to inform the father of the specific weeks by March 1st of each year and is expected to take into account their camp schedule and other activities. The father shall have the children the week before school begins.
Neither parent shall denigrate the other nor allow a third party to denigrate the other in the childrens' presence. Neither parent shall do anything that will estrange the children from the other parent, which will injure the opinion of the child as to the other parent or which will impair the natural development of the children's love and respect for each of the parents The parents shall exert their best efforts to work cooperatively to develop future plans for the children consistent with the best interests of the child and to amicably resolve such disputes as may arise from time to time.
2. Child Support
The current child support order is vacated. Pursuant to Connecticut Child Support guidelines, the mother shall pay to the father $85.00 per CT Page 10138 week for the support and maintenance of the minor children, Megan and Christina. Mr. Stratheam's child support obligation of $175.00/wk for Katherine is waived if he contributes $3,000.00 or more toward her 2001-2002 college expenses. This order takes into account Mr. Strathearn's salary and bonus incomes and is based upon the finding that Mrs. Consiglio has an earning capacity of $18.50 per hour, working a 40 hour work week. The $85.00 is a deviation from the guidelines amount and is done so to offset the mother's transportation and summer expenses for the children.
3. Medical insurance and Unreimbursed Expenses
The father shall be responsible for providing medical and dental insurance for the benefit of the minor children as available through his place of employment and at reasonable cost to him. The father shall be responsible for 80% of any co-pays and unreimbursed medical and dental expenses for the children. The mother shall be responsible for 20% of those unreimbursed expenses.
4. Tax exemption
The father shall receive the income tax deduction for the two children annually.
Prestley, J.